UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-CR-498 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) | |
| | ) | |
| ANTHONY LEE SMITH, | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Defendant Anthony Lee Smith seeks reconsideration of the detention order issued on September 9, 2022. (Doc. No. 130.) The United States opposed the motion (Doc. No. 135), and Defendant submitted a supplemental motion in support (Doc. No. 136). For the following reasons, Smith's request for pre-trial release with conditions is DENIED.

I.   **Background**

A.  **Indictment and Initial Proceedings**

On August 25, 2022, a federal grand jury returned a 38-count indictment alleging Smith and 13 other individuals engaged in a conspiracy to distribute and possessed with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine; 280 grams or more of a mixture and substance containing a detectable amount of cocaine base; and 40 grams or more of a mixture and substance containing a detectable amount of fentanyl. (Doc. No. 1, Indictment, at ¶ 1.)[1] Specific to Smith, he is charged in Count One

---

[1] One of Smith's codefendants and alleged coconspirators is his brother, Adrian Smith. (Doc. No. 50, PageID #270.)

with conspiracy to violate Sections 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C), and Counts 37 and 38 with distributing cocaine base "crack," in violation of Section 841(a)(1) and (b)(1)(C). (Doc. No. 1.)

On August 30, 2022, Smith was arrested while at the home of Chrishiaa Robinson. (Doc. No. 135-1.) Acknowledging Smith frequently stayed with her, Ms. Robinson gave officers verbal and written consent to search her home. (*Id.*) Evidence was recovered and Ms. Robinson consented to be interviewed. (*Id.*) Detailed information about the evidence seized and Ms. Robinson's statement were memorialized in Investigative Narrative Report No. 2021-31064 ("Investigative Narrative"). (*Id.*) Items seized included a Taurus 9mm firearm, loaded magazine, $5,000 in cash – all three of which were under men's clothing in the bedroom – and a digital scale, residue, and razor blade in a first floor garbage can. (*Id.*)

Smith was arraigned that same day. (8/30/2022 Minutes of Proceedings.) At arraignment, the government moved for detention and a detention hearing was scheduled. (*Id.*)

### B. Detention Hearing and Order

The detention hearing was held on September 6, 2022, at which time the government. proffered the indictment, Pretrial Services Report, and Investigative Narrative. (Doc. No. 133, PageID# 538.) Smith proffered letters in support and called Ms. Robinson to testify. (*Id*. at PageID# 539-40.)

In argument, the government stated that its motion was not premised on risk of flight, but rather clear and convincing evidence that Smith posed a danger to others and the community. (*Id*. at PageID# 555.) Acknowledging the Pretrial Services Report's ultimate recommendation for bond with conditions, the government countered the recommendation with the following: Smith's prior criminal history, including his convictions for assault, having weapons under

disability, possession of criminal tools, trafficking in drugs, and at least one failure to appear; the lack of verifiable employment; the applicable 10-year mandatory minimum for the drug trafficking offense charged in this matter; Smith's larger role in the charged conspiracy, including that he is named in 50 overt acts with 30-35 of those detailing Smith's direct communications about drug sales.  (*Id*. at PageID# 555-57.)  In conclusion, the government asserted that it had established that no condition or combination of conditions could assure the safety of others because releasing Smith to Ms. Robinson's residence would result to his returning to the home where he maintained a firearm, ammunition, cash, and tools associated with drug trafficking.  (*Id*. at PageID# 557-58.)

Defense counsel responded by arguing that the letters of support submitted to the Court support a finding that Smith is of high character and a decent human being.  (*Id*. at PageID# 559.)  Counsel noted that no drugs were found in the home where Smith lived or in the car that he drove.  (*Id*.)  Additionally, Smith is sometimes employed as, among other things, a mechanic.  (*Id*. at PageID# 560.)  With respect to the charges, counsel focused on the two distribution counts, Counts 37 and 38, and noted the low drug weights charged in those particular counts.  (*Id*. at PageID# 559.)  This, when coupled with a limited criminal history, bolstered counsel's argument that release to a community in which he has lived throughout his life would be appropriate.  (*Id*. at PageID# 559-60.)  Accordingly, counsel requested that the Court adopt the recommendations stated in the Pretrial Services Report.  (*Id*. at PageID# 560.)

On September 9, 2022, the Magistrate Judge issued the detention order finding "probable cause to believe the defendant committed an offense for which a maximum prison term of ten years or more is prescribed" in Title 21, United States Code, Sections 846 and 841(a)(1)(A), and

that Smith had not rebutted the presumption of detention in this instance. (Doc. No. 89.) As stated in the order, the Court further found:

> [T]he testimony and information submitted at the detention hearing establishes by clear and convincing evidence . . . that based upon the Defendant's violent behavior history; his history of weapons use; his criminal history; his lack of a suitable residence; his lack of verifiable, legitimate employment; and the nature of the instant offense; there is no condition or combination of conditions that will reasonably assure the safety of the community.

*Id.*

## II. Analysis

District courts review a magistrate judge's release or detention order *de novo*, meaning that the district court makes an independent determination as to whether any condition or combination of conditions can reasonably assure the defendant's appearance or the safety of the community. *United States v. Johnson*, 2022 U.S. Dist. LEXIS 127146 at *4-5 (N.D. Ohio July 18, 2022); *United States v. Trent*, 2022 U.S. Dist. LEXIS 2339 at *4 (N.D. Ohio Jan. 5, 2022).

A defendant may be detained only when a "judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and community." 18 U.S.C. § 3142(e). Dangerousness to another or the community must be established by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A risk of nonappearance need only be supported by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

Certain offenses are considered particularly dangerous. 18 U.S.C. § 3142(e)(3). If the Court finds probable cause to believe that a defendant committed one of the offenses listed in Section 3142(e)(3), detention is presumed. This presumption is rebuttable. "Although a defendant's burden of production is not heavy, he must produce at least some evidence" that he

is neither a risk of flight nor a danger to any other to rebut the presumption. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (internal quotations omitted).

If a defendant satisfies this burden of production, the Court must decide whether the government has nonetheless established that no condition or combination of conditions will reasonably assure appearance or the safety of any other person or the community. 18 U.S.C. § 3142(e). In doing so, the Court considers the following statutory factors: (1) the nature and circumstances of the offense(s) charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his character, family ties, community ties, employment, past record of failure to appear, and probationary status at the time of the offense; and (4) the nature and seriousness of the danger posed by defendant's release. 18 U.S.C. § 3142(g). The overall burden of persuasion rests, at all times, with the government. *Stone*, 608 F.3d at 945-46.

As part of its *de novo* review, the Court has reviewed the following:

1. The Indictment (Doc. No. 1);

2. The Pretrial Services Report (50);

3. Investigation Narrative (provided to the Court during the Detention Hearing and attached as Exhibit 1 to Doc. No. 135);

4. Letters produced by the Defendant (provided to the Court at the Detention Hearing);

5. The Magistrate Judge's Order of Detention (Doc. No. 89);

6. Detention Hearing Transcript (Doc. No. 133);

7. The Motion to Reconsider Order of Detention (Doc. No. 130);

8. Government's Response in Opposition to Defendant's Motion to Reconsider Order of Detention (Doc. No. 135); and

9. Supplemental Motion to Reconsider Order of Detention in Response to the Government's Opposition (Doc. No. 136).

### A. Presumption of Detention

"A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *Stone*, 608 F.3d at 945. When the government presents an indictment that charges an offense listed in 3142(e)(3), it has produced sufficient evidence that detention is presumed. *Id.*

The government has proffered the indictment, which charges Smith with "an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ." 18 U.S.C. § 3142(e)(3)(A). Smith does not dispute this point. Accordingly, the government has met its burden of establishing a presumption in favor of detention.

### B. Burden of Production

At the detention hearing, Smith produced letters attesting to his ties to the community and his family. He also called Chrisiaa Robinson as a witness. (Doc. No. 133, PageID# 540.) Ms. Robinson testified that: Smith lived with her and could return to live with her if released; he was not lawfully employed and did not pay taxes on income, but earned money working for his father, landscaping, painting and playing darts; she was unaware that he sold drugs; and no drugs were sold out of her home. (*Id*. at PageID# 541-45.) With respect to firearms, Ms. Robinson testified that she had a valid CCW permit and owned two Glock firearms, one she kept in the house and the other in her car. (*Id*. at PageID# 542.) On cross examination, Ms. Robinson acknowledged the Taurus 9mm found in the bedroom under men's clothing, but stated that it had been gifted to her by a friend. (*Id*. at PageID# 548-49.)

Robinson's testimony contradicted statements attributed to her in the Investigative Narrative. When interviewed by law enforcement officers on August 30, 2022, Ms. Robinson

stated that Smith "stayed with her frequently," not that he lived with her. (Doc. No. 135-1.) With respect to drugs and drug trafficking, Robinson admitted knowing Smith dealt drugs, but stated that she and Smith had an understanding that he would not do so from her home. (*Id.*) The Taurus 9mm, she said, was Smith's. (*Id.*) She denied responsibility for any other illegal items in her home and instead told officers that she believed anything illegal belonged to Smith. (*Id.*)

The Magistrate Judge correctly determined that Smith had not rebutted the undisputed presumption in favor of detention. Smith now offers alternative conditions for this Court's consideration: that he could live with his mother and be placed on electronic monitoring. (Doc. No. 130, PageID# 525.) This information was known to him at the time of the detention hearing but not argued to the Magistrate Judge. Even with these two alternatives now offered, Smith has failed to rebut the presumption.

While living with his mother may appear to be a suitable residence, the Court notes that Ms. Robinson initially stated that Smith promised he would not use her home to facilitate his drug dealing. When officers found the Taurus 9mm firearm, ammunition, cash and other evidentiary items in her home, she said that they were all Smith's. There is no evidence in the record to suggest or support a conclusion that Smith would conduct himself differently if released to his mother's home. As for electronic monitoring, this only assists the Court with knowing *where* a defendant is, not what he is *doing*. With the government proceeding on a dangerousness theory and this Court considering whether allowing him to reside at his mother's would be appropriate, what Smith had in his last residence is informative: a firearm; ammunition; $5,000 in cash; and a digital scale with a razor and residue. (Doc. No. 135-1.)

Assuming *arguendo* that these alternatives were sufficient to rebut the presumption of detention here, the Court's review of the Section 3142(g) factors leads it to conclude that there are no conditions, even the ones now proffered, that would assure the safety of others and the community.

In evaluating the nature and circumstances of the offenses charged, the Court notes that there is no dispute that the charges involve drug trafficking offenses, one of which comes with a 10-year mandatory minimum term of incarceration. The presumption of detention for dangerous offenses such as that charged in Count One remains a factor for this Court's consideration even when the presumption has been rebutted. *Stone*, 608 F.3d at 947 (also recognizing that the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant engaged in violence.")

As to the weight of the evidence of dangerousness, the Court finds that the indictment contains allegations that Smith played a large role in a drug trafficking conspiracy that distributed large amounts of narcotics in the Elyria, Ohio area dating as far back as March 7, 2021. (Doc. No. 1 at ¶¶ 6-25, 27-39, 46-49, 51-52, 54-57, 59-60, 64-65, 69-70, 77-79, 116-17.) Notably, the indictment also alleges that Smith prepared "crack" for sale (*id*. at ¶ 15); spoke with his brother about obtaining a firearm (*id* at ¶ 79); and determined what prices would be charged for drug sales (*id* at ¶¶ 69, 78).

With respect to Smith's history and characteristics, the Court has considered, among other things, his family and community ties, employment status, past conduct, and criminal history. 18 U.S.C. § 3142(g)(3). The Court credits the letters received in support. Smith may be a loving and supportive parent, partner, and son, but that support did not prevent his return to

criminal activity and possession of a firearm.  On balance, Smith's history and characteristics weigh in favor of finding dangerousness.

As to the nature and seriousness of the danger posed to the community if Smith is released, the extensive allegations in the complaint, the large amount of drug weight attributed to the conspiracy he played a significant role in supporting, his stated interest in and possession of a firearm, criminal history, and lack of verifiable employment or income are too significant to be overcome by the support of family and friends.  *See United States v. Gray*, 20 F. App'x 473 (6th Cir. 2001).

### III.  Conclusion

After reviewing all of these factors, and for the reasons stated herein, the Court finds by clear and convincing evidence that Smith presents a danger to the community such that no condition or combination of conditions could reasonably assure the safety of others and the community.  Smith's motion is DENIED.

**IT IS SO ORDERED.**

Date: November 16, 2022

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE